**JAVERBAUM WURGAFT HICKS**
**KAHN WIKSTROM & SININS, P.C.**
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ 08043
Phone: 856.596.4100
Fax: 856.702.6640
Michael A. Galpern, Esquire
Attorney ID No.: 029031988
Zachary M. Green, Esquire
Attorney ID No.: 181512016

**KLAFTER OLSEN & LESSER LLC**
Two International Drive, Suite 350
Rye Brook, N.Y.  10573
Phone:  914.934.9200
Seth R. Lesser, Esquire
Attorney ID No.:  051051988
Morgan M. Stacey, Esquire (*pro hac* to be filed)

**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.G. as guardian of his minor child C.G., and on behalf of those similarly situated, and J.G. individually, and on behalf of those similarly situated; | CLASS ACTION COMPLAINT CLASS REPRESENTATION |
| | DEMAND FOR JURY TRIAL |
| Plaintiff(s), | |
| v. | |
| JUUL LABS INC.; ALTRIA GROUP, INC.; and PHILIP MORRIS USA, INC., JOHN DOES #1-25; JANE ROES #1-25; ABC CORPORATION #1-25, | |
| Defendant(s). | |

## INTRODUCTION

1. This is a class action brought on behalf of all New Jersey citizens who have purchased, used, become addicted to, or been otherwise harmed by Electronic Nicotine Delivery Systems (hereinafter, "ENDS")[1], including but not limited to, electronic cigarettes, e-cigarettes, vaporizers, pods, e-liquids, and their component parts, manufactured, designed, assembled, promoted, delivered, marketed, sold, and/or supplied by Defendants.

2. Plaintiffs further propose a Subclass to include all class members who, at the time of at least one purchase of Defendant's electronic cigarettes, vaporizers, or pods were under the age of eighteen (18).

3. As outlined in greater detail herein, Defendants designed, manufactured, assembled, installed, delivered, marketed, sold, supplied, and or otherwise took action with respect to the above referenced products, specifically targeting Plaintiffs and those similarly situated through misleading, deceptive, and unconscionable practices and exploiting themes and images that resonate with teenagers and young adults, including but not limited to, the use of popular animation, hiring of models and influencers to promote e-cigarettes, social media advertising, and manufacturing and promoting flavors that were designed to appeal to minors and young adults, while falsely denying doing so.

4. Defendants' unlawful practices have led to an epidemic of individuals addicted to e-cigarettes and vaping, to their severe detriment.

---

[1] As used in this Complaint, "ENDS" refers to and includes all nonlighted, noncombustible devices that employ a mechanical heating element, battery, or circuit, regardless of shape or size, to produce aerosolized or vaporized nicotine for inhalation into the body of a person, including but not limited to a device that is manufactured, distributed, marketed, or sold as an e-cigarette, e-cigar, e-pipe, e-hookah, vape pen, or any other similar product with any other product name or descriptor, including component parts.

5.  Defendants based their conduct on decades of research by the tobacco industry about how to manipulate individuals into becoming addicted to their nicotine-containing products.

6.  In November 2018, after approximately three years of advertising, Defendant JUUL Labs, Inc. (hereinafter, "JUUL") shut down and deleted its social media accounts after years of promotion, advertising, and marketing directed at minors and young adults.

7.  Such marketing was done fraudulently with the intent to mislead individuals – such as the class members – into purchasing JUUL e-cigarettes, pods, and related ENDS.

8.  When Defendants launched their products, they failed to warn of any adverse effects that they knew, or should have known, would likely occur, including but not limited to addiction, increased risk of heart disease and stroke, changes in brain functionality leading to anxiety, depression, and other long term mental health conditions, decreased functionality of the endocrine system, heightened risk of cancer, and negative effects on fertility. Defendants fraudulently marketed their products as safer than conventional cigarettes.

9.  The Centers for Disease Control and Prevention (hereinafter, "CDC") and the Food and Drug Administration (hereinafter, "FDA"), along with numerous recognized medical experts, have indicated that electronic cigarettes should not be used by youth, young adults, pregnant women, or adults who do not currently use tobacco products.

10. Additionally, the CDC, FDA, and numerous recognized medical experts have advised adult smokers who are attempting to quit to refrain from using ENDS and instead use evidence-based treatments, including counseling and FDA-approved medications.

11. JUUL products have not been approved by the FDA as a smoking cessation therapy or in any other capacity.

12. Currently, Defendants have offered no meaningful remedies or efforts at mitigation of use, sale, or exposure to minors beyond completely inadequate warnings generally designed for conventional cigarettes.

13. Through this class action Plaintiffs seek, inter alia, reasonable and adequate compensation for pain and suffering, emotional distress, medical expenses, and disfigurement, as well as in the form of injunctive relief, and continued medical monitoring over time, as described in the decision Ayers v. Jackson Twp., 106 N.J. 557 (1987), at Defendant's expense.

## VENUE

14. Venue is proper in the District Court of New Jersey pursuant to 28 U.S.C. § 1332(d) as there are over 100 class members, the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, and at least one Plaintiff and Defendant are citizens of different states. Venue is also proper in the District Court of New Jersey under 28 U.S.C. § 1331 inasmuch as one or more claims arise under federal law. This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367.

15. This Court has personal jurisdiction over all Defendants as Defendants do business in New Jersey and have sufficient minimum contacts in New Jersey. Defendants intentionally avail themselves of the markets in this State through the promotion, marketing, sale, and distribution of the products at issue in this lawsuit.

16. A substantial part of the events and/or omissions giving rise to the claims at issue in this Complaint arose in New Jersey.

## THE PARTIES

### Plaintiff J.G.

17. Plaintiff J.G. is an individual residing in Voorhees, New Jersey who is a member of the class in that he purchased ENDS manufactured, designed, assembled, installed, delivered, marketed, sold, and/or supplied by Defendants for his son, Plaintiff C.G., based on false, misleading, deceptive, unconscionable, and/or inadequate practices, resulting in his severe detriment.

18. Plaintiff J.G. is the father of Plaintiff C.G.

19. Plaintiff J.G. began purchasing JUUL e-cigarettes for Plaintiff C.G. when C.G. was approximately fourteen (14) years old.

20. When he began purchasing JUUL e-cigarettes for C.G., he believed based on JUUL's advertisements and marketing, that these products were safe for use, were safer than conventional cigarettes, and would not cause adverse health effects.

21. When he began purchasing JUUL e-cigarettes for C.G., he was unaware of the addictiveness of these products.

22. When he began purchasing JUUL e-cigarettes for C.G., he was unaware that these products contained nicotine.

23. Plaintiff J.G. was attracted to, and most purchased, fruit flavored JUUL products for C.G.

24. Plaintiff J.G. would not have purchased JUUL products for C.G. had he known that they were highly addictive, contained nicotine in concentrations more potent than conventional cigarettes, and could cause adverse health effects.

25. Before he learned of the adverse health consequences of using JUUL e-cigarettes and vaporizers, Plaintiff C.G. smoked approximately one full pod per day.

26. As a result of his use of JUUL e-cigarettes, Plaintiff C.G. has suffered, and continues to suffer, severe adverse health effects, including but not limited to severe coughing and vomiting.

27. Due to C.G.'s JUUL e-cigarette use, Plaintiff J.G. suffers, and continues to suffer, adverse consequences including, but not limited to, severe emotional distress and medical expenses.

### Plaintiff C.G.

28. Plaintiff C.G. is an individual residing in Voorhees, New Jersey who is a member of the class in that he purchased, used, and became addicted to, ENDS manufactured, designed, assembled, installed, delivered, marketed, sold, and/or supplied by Defendants based on false, misleading, deceptive, unconscionable, and/or inadequate practices, resulting in his severe detriment.

29. Plaintiff C.G. was born on January 31, 2003 and began using JUUL e-cigarettes at age fourteen (14).

30. When he began using JUUL e-cigarettes, he believed based on JUUL's advertisements and marketing, that these products were safe for use, were safer than conventional cigarettes, and would not cause adverse health effects.

31. When he began using JUUL e-cigarettes, he was unaware of the addictiveness of these products.

32. When he began using JUUL e-cigarettes, he was unaware that these products contained nicotine.

33. Plaintiff C.G. was attracted to, and most used, fruit flavored JUUL products.

34. Plaintiff C.G. would not have purchased and/or used JUUL products had he known that they were highly addictive, contained nicotine in concentrations more potent than conventional cigarettes, and could cause adverse health effects.

35. Plaintiff C.G. is now sixteen (16) years old at the time of this filing.

36. Before learning of the adverse health consequences of JUUL vaporizers and e-cigarettes, Plaintiff C.G. currently smoked one full JUUL pod per day.

37. Plaintiff C.G. has become addicted to nicotine due to his use of JUUL pods.

38. Plaintiff C.G. has never smoked a conventional cigarette and would not have started smoking JUUL pods had he known of their addictiveness, that they contained nicotine, and that they could cause severe adverse health consequences.

39. As a result of his use of JUUL e-cigarettes, Plaintiff C.G. has suffered, and continues to suffer, severe adverse health effects, including but not limited to daily coughing and vomiting.

**Defendants**

40. Defendant JUUL Labs, Inc. is Delaware corporation with its principal place of business located at 560 20th Street, San Francisco, CA 94107. JUUL originally operated under the name of PAX Labs, Inc. In 2017, it was renamed JUUL Labs, Inc. JUUL manufactures, designs, assembles, installs, delivers, markets, sells, promotes, and/or supplies ENDS, including but not limited to, e-cigarettes, vaporizers, e-liquids, and associated component parts.

41. Defendant Altria Group, Inc. ("Altria") is a Virginia Corporation with its principal place of business located at 6601 West Broad Street, Richmond, Virginia 23230.

42. Defendant Philip Morris USA, Inc. ("Philip Morris") is a wholly owned subsidiary of Altria. Philip Morris is a Virginia corporation with its principal place of business located at 615 Maury Street, Richmond, Virginia, 23224. Philip Morris is engaged in the manufacture and sale of conventional cigarettes in the United States. Philip Morris is the largest conventional cigarette company in the United States.

43. Altria and Philip Morris have a thirty-five (35) percent ownership in JUUL.

## FACTUAL BASIS FOR THE RELIEF REQUESTED

44. Plaintiffs and the classes incorporate all prior allegations of the class complaint.

45. Defendants JUUL, Altria, and Philip Morris will be referred to hereinafter collectively as "JUUL" or "Defendants."

46. JUUL manufactures, designs, assembles, installs, delivers, markets, sells, promotes, and/or supplies ENDS, including but not limited to, e-cigarettes, vaporizers, e-liquids, and associated component parts and engages in the manufacture, design, assembly, delivery, marketing, advertising, sale, promotion, distribution, and/or supply of ENDS in the state of New Jersey and elsewhere.

47. Defendant JUUL began manufacturing, designing, assembling, delivering, advertising, promoting, marketing, selling, and/or supplying e-cigarettes and associated ENDS in approximately 2015.

48. According to the FDA, 3,620,000 middle and high school students in the United States used e-cigarettes in 2018.

49. E-cigarette use increased seventy-eight (78) percent among high school students between 2017 and 2018, from 11.7% of all students to 20.8% of all students.

50. E-cigarette use also increased forty-eight (48) percent among middle school students, from 3.3% to 4.9% of all students, from 2017 to 2018.

51. According to a 2013-2014 survey cited by the FDA, eighty-one (81) percent of current youth e-cigarette users cited the availability of appealing flavors as the primary reason for use.

52. The FDA and health professionals have called the use of e-cigarettes among youth an epidemic.

53. A 2016 NJ Youth Tobacco Survey found that, as of 2016, "vaping" surpassed the prevalence of conventional cigarette usage.

54. The New Jersey Department of Education has alerted the public that it is a misconception that "vaping" is safe and that e-cigarettes are not safe for use, contain nicotine, and are harmful to adolescent brain development.

55. Defendant's ENDS, including e-cigarettes, pods, e-liquids, and component parts, deliver dangerous toxins and carcinogens to users, including Plaintiffs and the class members. Nicotine itself is a carcinogen, as well as a toxic chemical associated with cardiovascular, reproductive, and immunosuppressive problems.

56. Nicotine adversely affects multiple bodily systems.

57. Numerous medical experts, including the CDC, have advised that additional research is necessary to determine the adverse effects of the multiple toxins present in e-liquids, but evidence suggests that short term usage can adversely affect pulmonary function because it introduces foreign substances into the lungs.

58. Since 2015, JUUL has become the dominant e-cigarette manufacturer in the United States.

59. A recent study from Stanford University School of Medicine notes that in November 2018, JUUL had 76.1 percent of the United States e-cigarette market.[2]

60. JUUL e-cigarettes look like a USB flash drive, can charge in a computer, and are small enough to be hidden in a closed hand. JUUL e-cigarettes are used by heating up a small cartridge containing oils, called "JUUL pods", "pods", or e-liquids, to create vapor, which quickly dissolves in the air. Other "pod" or "e-liquid" manufacturers design, manufacture, sell, and promote pods in numerous flavors that are able to be used with JUUL e-cigarettes.

61. JUUL pods include the ingredients nicotine, benzoic acid glycerine, and propylene glycol.

62. JUUL currently designs, assembles, delivers, markets, sells, promotes, and/or supplies eight flavors of "pods," including mango, fruit, cucumber, crème, and mint.

63. JUUL's website states that JUUL "pods" are proprietary.

64. JUUL's website does not offer any warning regarding pods manufactured by other entities.

65. Despite being marketed as a safe alternative to conventional cigarettes, JUUL pods deliver a higher concentration of nicotine per pod than a pack of cigarettes and utilize a device that is easier to conceal than a conventional cigarette, making it more addictive and attractive to individuals than conventional cigarettes.[3]

---

[2] Jackler, Robert K., et al. "JUUL Advertising Over Its First Three Years on the Market." Stanford Research into the Impact of Tobacco Advertising. January 2019.
[3] Esther E. Omaiye, MS et al., Toxicity of JUUL Fluids and Aerosols Correlates Strongly with Nicotine and Some Flavor Chemical Concentrations (Dec. 2018), available at:
https://www.biorxiv.org/content/biorxiv/early/2018/12/09/490607.full.pdf

66. The adverse effects of nicotine on brain development and bodily systems are well-studied. Nicotine adversely affects the heart, eyes, reproductive system, lungs, and kidneys.

67. JUUL pods were designed to decrease the perceived harshness of nicotine ingestion, thus creating a greater likelihood of abuse from new users. [4]

68. This design shows Defendants intention to recruit nonsmokers to use its e-cigarettes.

69. Other manufacturers design, market, advertise, promote, sell, and distribute "pods" that are advertised as compatible with JUUL e-cigarettes that come in a variety of flavors, many directly appealing to minors and new users.

70. While JUUL has recently, in the face of public pressure, taken action to prevent other manufacturers from selling such compatible pods, these pods remain on the market and are able to be used with JUUL's e-cigarette. As such, JUUL's recent action, after years of inaction, is too little too late and does nothing to discourage the minors already addicted to its products.

---

[4] Duell, James F. Pankow, and David H. Peyton, Free-Base Nicotine Determination in Electronic Cigarette Liquids by 1H NMR Spectroscopy, 31 Chem. Res. Toxicol. 431, 431 (2018).









71. The JUUL e-cigarette is operated when a sensor in the devise senses suction on the mouthpiece, at which time the battery activates the heating element which converts the solution in the pod into a vapor.

72. A light in the e-cigarette indicates the battery level.

73. Defendant designed its e-cigarettes and associated ENDS to be simplistic, easy to use, and easy to conceal.

74. Such defective design has caused an increased risk of nicotine addiction among users.

75. Recent studies have shown that the amount of nicotine per puff of a JUUL e-cigarette is the substantially the same, or greater than, that of a conventional cigarette.[5]

76. Defendant also specifically implemented a marketing scheme designed to attract individuals to purchase their highly addictive products, while using false, deceptive, unconscionable, and misleading advertising regarding the health effects of their products and their relative safety to conventional cigarettes.

77. To date, the CDC and FDA have reported at least 215 cases of pulmonary illness across 25 states related to the use of electronic cigarettes.

78. Defendant knew or should have known that e-cigarettes were not safe for non-smokers and posed a similar, if not increased, risk of nicotine dependence as conventional cigarettes, but failed to disclose this information to the public, including Plaintiffs and class members.

79. JUUL did not add nicotine warnings on its packaging until August 2018, after being forced to do so.

80. Again, the failure to adequately warn users that its products contain nicotine shows Defendants' intent to attract minor consumers to use, and become addicted to, their product under false pretenses.

81. Even after adding the nicotine warnings on the packaging, Defendant has not ceased or diminished, nor materially changed, its marketing efforts to entice individuals to purchase and use JUUL.

82. JUUL has not been approved by the FDA or any other entity as a smoking therapy or smoking cessation device, despite implicitly advertising as such for years through the

---

[5] Reilly et al., Free Radical, Carbonyl, and Nicotine Levels Produced by JUUL Electronic Cigarettes, 3.

"Switch" to JUUL marketing campaign in which it advertised as an alternative to conventional cigarettes.

83. The FDA has specifically stated that any smokers attempting to quit should seek counseling or FDA approved smoking cessation methods rather than e-cigarettes.

84. On September 9, 2019, the FDA sent Defendant JUUL a "warning letter" finding that JUUL fraudulently and unlawfully marketed, sold, and distributed its products by advertising them as safer than conventional cigarettes, without the appropriate scientific evidence and FDA Order to make such a claim.

85. JUUL has admitted to using tobacco industry advertisements, which were created to specifically attract non-smoking individuals, as a guide for its advertising and marketing campaigns.

86. These advertisements and marketing campaigns included themes specifically designed to attract new users to use JUUL products.

87. These themes include, but are not limited to, love, attractiveness, sexuality, popularity, parties, social events, celebrity, and being "cool. The following are illustrative marketing materials:



**JUUL** @JUULvapor · 4 Jun 2015
**JUUL**   Vapor love #JUUL #LightsCameraVapor #Vaporized





JUUL ☑ @JUULvapor · 28 Aug 2017
Do you brulée? RT if you enjoy dessert without the spoon with our Creme Brulee
#JUULpods bit.ly/2wvDk38

88. JUUL was well aware that its fraudulent advertising and marketing was targeted towards
    encouraging and attracting individuals towards its products, without revealing the highly
    addictive nature thereof. JUUL also failed to disclose the serious adverse health effects of
    using its products, while falsely marketing them as safer than conventional cigarettes.
    Nonetheless, JUUL has consistently attempted to expand its marketing to entice new
    users.







89. Even after adding the warnings that its products contain nicotine, JUUL continued to promote its flavors that were most popular and promote a campaign explicitly and implicitly indicating that these products were safer than conventional cigarettes.

90. Whether a class member will develop pulmonary disease, or other nicotine and e-cigarette related conditions, cannot be determined at the present time and can only be determined by a series of tests over time.

91. Indeed, negative results for disease at the present time may actually further endanger a class member's health as it may promote a false sense of security and safety, when in reality that class member may still contract nicotine or e-cigarette related disease in the future based on their addiction to, and use of, electronic cigarettes.

92. Since its inception, JUUL has engaged in a false, misleading, and fraudulent advertising, based on the assertion that its e-cigarettes and associated ENDS were a safer alternative to conventional cigarettes, without providing any basis, medical or otherwise, to assert such a claim.

93. JUUL engaged in deceptive and misleading marketing and advertising specifically directed to engage individuals and encourage them to purchase, use, and become addicted to e-cigarettes and ENDS.

94. Defendant have made minimal, at best perfunctory, efforts to warn of the severe health effects of their products, efforts that Defendant knows are not likely to be materially successful in causing users not to purchase JUUL.

95. The seriousness of the danger faced by the class due to the actions of Defendant cannot be overstated.

96. Through this class action Plaintiffs seek, inter alia, reasonable and adequate compensation for pain and suffering, emotional distress, medical expenses, and disfigurement, as well as in the form of injunctive relief, and continued medical monitoring over time, as described in the decision Ayers v. Jackson Twp., 106 N.J. 557 (1987), at Defendant's expense.

## CLASS ACTION ALLEGATIONS

97. Plaintiffs bring this action as a class action on behalf of a class defined as:

> **All New Jersey residents who have purchased, used, become addicted to, or been otherwise harmed by Electronic Nicotine Delivery Systems (hereinafter, "ENDS"), including but not limited to, electronic cigarettes, vaporizers, e-liquids, and their component parts manufactured, designed, promoted, assembled, delivered, marketed, sold, and/or supplied by Defendants.**

98. Plaintiffs further propose the following Youth Subclass:

> **All New Jersey residents under the age of eighteen (18) at the time at least one purchase of Electronic Nicotine Delivery Systems (hereinafter, "ENDS"), including but not limited to, electronic cigarettes, vaporizers, e-liquids, and their component parts manufactured, designed, promoted, assembled, delivered, marketed, sold, and/or supplied by Defendants.**

99. Plaintiffs do not know the exact size of the classes, but each class is composed of more than 500 persons. The persons in the classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action rather than individual actions will benefit the parties and the Court.

100.     There are numerous common questions of fact affecting the rights of all class

members, including inter alia:

    a.   Whether the classes are in need of a court-monitored program of injunctive and

        equitable relief, including periodic medical monitoring on multiple occasions over

        time under the Supreme Court holding in Ayers v. Jackson Twp., 106 N.J. 557

        (1987);

    b.   Whether Defendants engaged in false, deceptive, unconscionable, and misleading

        advertising and marketing tactics, some of which were specifically designed to

        target minors and new users.

    c.   Whether Defendants engaged in unlawful, unfair, or deceptive business practices;

    d.   Whether Defendants made unlawful representations or omissions regarding their

        e-cigarettes and associated ENDS products;

    e.   Whether Defendants engaged in such practices in a manner that they knew, or

        should have known, would cause injury to Plaintiffs and the classes;

    f.   Whether Defendants unlawfully marketed their e-cigarettes and associated ENDS

        to minors;

    g.   Whether Defendants failed to employ reasonable precautions and safeguards to

        minimize or eliminate damage to Plaintiffs and the classes;

    h.   Whether Plaintiffs and class members are entitled to punitive damages.

101.     Plaintiffs are members of the classes that they seek to represent, and their claims

are typical of all class members in that Plaintiffs' claims arise from the same factual and

legal basis as those of the classes.

102.    All members of the classes, including Plaintiffs, have been damaged in the same manner by the actions complained of herein.

103.    Plaintiffs will thoroughly and adequately protect the interests of the classes, having retained qualified and competent legal counsel to represent himself and the classes.

104.    Plaintiffs' counsel are highly experienced in class actions, some of whom have participated in over 175 certified class actions, including class actions for medical monitoring, employment, products liability, and other legal issues.

105.    Plaintiffs have no interests antagonistic to that of the classes.

106.    The prosecution of separate actions by individual class members will create a risk of inconsistent or varying adjudications.

107.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

108.    Defendant has acted and refused to act on grounds generally applicable to the entire class, thereby making injunctive and equitable relief, in addition to monetary compensation, appropriate for the entire class.

## COUNT ONE

### Negligence

109.    Plaintiffs and the classes incorporate all prior allegations of this complaint.

110.    At all times material to the within cause of action, Defendants were engaged in doing business throughout the State of New Jersey and elsewhere, specifically having designed, manufactured, assembled, distributed, and sold certain e-cigarettes and

associated ENDS, together with their component parts, in interstate commerce, in New Jersey and elsewhere.

111.     It was at all times foreseeable to Defendants that failure to provide adequate warnings regarding the potential dangers of e-cigarettes and ENDS would result in harm to Plaintiffs and the classes as alleged herein.

112.     This includes, but is not limited to, the failure to provide adequate information regarding the medical effects of using e-cigarettes and ENDS, the failure to provide adequate warnings on the packaging of e-cigarettes and ENDS regarding adverse health effects, the failure to provide adequate warnings on e-cigarettes and ENDS regarding the potential for adverse health effects and/or malfunction, the failure to implement proper safeguards to discourage the sale of e-cigarettes and ENDS to minors, and the failure to install proper safeguards to discourage the use of e-cigarettes and ENDS by new e-cigarette users and minors.

113.     It was also at all times foreseeable that the inadequate, improper, and unlawful design of Defendants' e-cigarettes and associated ENDS would attract, enable, and encourage individuals, including and especially minors, to use such products.

114.     Despite this, Defendants failed to provide such reasonable safeguards and take other reasonable actions that a prudent person under similar circumstances would have taken to eliminate or minimize the risk of danger to Plaintiffs and the classes.

115.     The injuries suffered by Plaintiffs and the classes were directly and proximately caused by the negligence of Defendants as a result of the actions or inaction Defendants took in manufacturing, designing, assembling, installing, marketing, selling, delivering, or otherwise handling the subject e-cigarettes and ENDS and component products.

116.     The conduct of Defendants was both a proximate cause and a cause in fact of the exposure and damages inflicted on Plaintiffs and the classes and the expenses made necessary by such exposure.

117.     As a result of Defendant's conduct, the Plaintiffs and the classes have suffered damages and have also been injured within the meaning of Ayers v. Jackson Twp., 106 N.J. 557, 592 (1987).

118.     WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT TWO

### Violation of the New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1, et seq.)

119.     Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this complaint.

120.     The New Jersey Consumer Fraud Act (hereinafter, "CFA") at N.J.S.A. § 56:8-2 prohibits businesses from engaging in any misrepresentations, fraud, false pretense, deception, or unconscionable commercial conduct in connection with consumer sales.

121.     N.J.S.A. § 56:8-2 also prohibits businesses engaging in any suppression or omission of any material fact with the intent that others will rely on such suppression or omission, in connection with consumer sales.

122.     Defendant violated the CFA by misrepresenting the e-cigarettes and ENDS, including e-liquids, pods, and component parts, to be a safe for use.

123.     Defendant also violated the CFA by suppressing and/or omitting material facts regarding the addictiveness and safety of e-cigarettes and ENDS.

124.    Defendant also violated the CFA by engaging in unconscionable conduct with respect to targeting minors for the sale of e-cigarettes and ENDS.

125.    The violation of another statute, particularly another statute providing protection to consumers, can constitute a deceptive and/or unconscionable commercial practice in violation of the CFA.

126.    Defendants engaged in unconscionable commercial practices in violation of the CFA by violating the N.J.S.A. § 2A:170-51.4, which states that no business may directly or indirectly sell, or offer for sale, any electronic smoking device that can be used to deliver nicotine or other substances to the person inhaling from the device, including any component part to the device or related product, to an individual under the age of twenty-one (21).

127.    Each false pretense, misrepresentation, unconscionable act, and/or knowing omission of material fact by Defendant constitutes a separate violation of the CFA.

128.    As a direct and proximate cause of Defendant's violation of the CFA, Plaintiffs and the classes have suffered, and will in the future continue to suffer, injuries and damages.

129.    Under N.J.S.A. § 56:8-19, Plaintiffs and members of the classes are entitled to treble damages for each violation committed by Defendants under the CFA.

130.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT THREE

### Fraud

131.     Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this

complaint.

132.     Defendants fraudulently and deceptively marketed, advertised, distributed, and

sold e-cigarettes and associated ENDS as non-addictive or less addictive products than

conventional cigarettes.

133.     Defendants failed to disclose the highly addictive nature of their products and the

adverse health effects likely to arise therefrom.

134.     Defendants made these fraudulent representations to Plaintiffs and the classes.

135.     Each misrepresentation and omission was material as it contributed to the

evaluations by Plaintiffs and the classes as to whether to purchase and use Defendants

products.

136.     Defendants knew that its misrepresentations and omissions were false and

intended Plaintiffs and the classes to rely upon these misrepresentations and omissions to

purchase their products.

137.     Plaintiffs and the classes reasonably relied upon Defendants misrepresentations

and omissions to their severe detriment.

138.     WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally

or in the alternative in the amount of damages and together with interest, costs of suit,

and such other relief as is just and proper.

## COUNT FOUR

### False Advertising

139.     Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this
complaint.

140.     The Regulations Governing General Advertising, N.J.A.C. § 13:45A-9.1 et seq.
(hereinafter, "Advertising Regulations") address general advertising practices.

141.     The Advertising Regulations provide, in relevant part, under N.J.A.C. § 13:45A-
9.2, the following:

(a) Without limiting the application of N.J.S.A. § 56:8-1et seq.
[the CFA], the following practices shall be unlawful with respect
to all advertisements:

5. The use of any type, size, location, lighting, illustration, graphic
depiction, or color resulting in the obscuring of any material fact.
Disclaimers permitted or required under this section, such as
"terms and conditions apply" and "quantities limited," shall be set
forth in a type size and style that is clear and conspicuous relative
to the other type sizes and styles used in the advertisement.

10. The failure of an advertiser to substantiate through documents,
records or other written proof any claim made regarding the safety,
performance, availability, efficiency, quality or price of the
advertised merchandise, nature of the offering or quantity of
advertised merchandise available for sale. Such records shall be

made available upon request for inspection by the Division or its

designee at the advertiser's regular place of business or central

office in New Jersey, or, at the advertiser's option, the Division's

designated offices, for a period of 90 days following the effective

date of the advertisement.

[N.J.A.C. § 13:45A-9.2].

142.    In its advertisements, Defendant used illustrations, graphic depictions, colors,

models, influencers, and type that resulted in obscuring material facts regarding the

addictiveness and misrepresenting the safety of e-cigarettes and ENDS.

143.    Defendant's disclaimers on its advertisements were woefully insufficient relative

to other aspects of the advertisements.

144.    Defendant has failed to substantiate through any credible documents, records, or

any other written proof its claims regarding the safety of its products, including but not

limited to the assertion that e-cigarettes and ENDS assist conventional cigarette smokers

to quit smoking and/or that e-cigarettes and ENDS are safer than conventional cigarettes.

145.    The above referenced violations constitute multiple violations of the Advertising

Regulations.

146.    Each violation of the Advertising Regulations by Defendant constitutes a per se

violation of the CFA.

147.    As a direct and proximate cause of Defendant's violation of the Advertising

Regulations, Plaintiffs and the classes have suffered, and will in the future continue to

suffer, severe injuries and damages.

148.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT FIVE

### Strict Liability- Failure to Warn

149.    Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this complaint.

150.    At all times material to the within cause of action, Defendant was engaged in doing business throughout the State of New Jersey and elsewhere, specifically having designed, manufactured, assembled, distributed, and sold certain e-cigarettes and ENDS and associated products, together with their component parts, in interstate commerce, in New Jersey and elsewhere.

151.    As discussed above, it was foreseeable to Defendants that individuals, including minors, would use and misuse Defendants' products to their detriment.

152.    Plaintiffs and the classes received JUUL products in the same conditions in which they manufactured, designed, distributed, and sold and used their products in a manner reasonably intended by Defendants.

153.    The risks of using Defendants products were known to Defendants at the time of manufacture, design, distribution, and sale.

154.    The risks of using Defendants products were unknowable and unexpected to the average consumer, including Plaintiffs and the classes.

155.    The injuries to Plaintiffs and the classes were directly and proximately caused by the actions or inactions of Defendant and Defendant is liable to said Plaintiffs in this cause of action based upon the theory of strict liability in the following particulars:

i.    In failing to warn users, including Plaintiffs and members of the classes, of the defects, dangers, risks, and/or hazards which existed in the subject e-cigarettes and ENDS;

j.    In failing to design, manufacture, assemble, promote, sell, supply, or otherwise take action with respect to said e-cigarettes and ENDS in accordance with safety codes, regulations, and statutes applicable to same;

k.    In failing to correct the defective and dangerous conditions existing in the subject e-cigarettes and ENDS.

156.    As a direct and proximate result of the actions or inactions of Defendant, Plaintiffs and the classes have suffered, and will continue in the future to suffer, severe injuries and damages.

157.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT SIX

### Strict Liability- Defective Design

158.    Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this complaint.

159.    At all times material to the within cause of action, Defendant was engaged in doing business throughout the State of New Jersey and elsewhere, specifically having

designed, manufactured, assembled, distributed, and sold certain e-cigarettes and ENDS
and associated products, together with their component parts, in interstate commerce, in
New Jersey and elsewhere.

160.     As discussed above, it was foreseeable to Defendants that individuals, including
minors, would use and misuse Defendants' products to their detriment.

161.     The injuries to Plaintiffs and the classes were directly and proximately caused by
the actions or inactions of Defendant and Defendant is liable to said Plaintiffs in this
cause of action based upon the theory of strict liability in the following particulars:

   a.   In designing, manufacturing, assembling, installing, supplying, or otherwise
        taking action with respect to the aforesaid e-cigarettes and ENDS in a deficient
        and defective condition;

   b.   In failing to equip said e-cigarettes ENDS with proper safeguards;

   c.   In failing to design, manufacture, assemble, promote, sell, supply, or otherwise
        take action with respect to said e-cigarettes and ENDS in accordance with safety
        codes, regulations, and statutes applicable to same;

   d.   In failing to correct the defective and dangerous conditions existing in the subject
        e-cigarettes and ENDS.

162.     As a direct and proximate result of the actions or inactions of Defendant,
Plaintiffs and the classes have suffered, and will continue in the future to suffer, severe
injuries and damages.

163.     WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally
or in the alternative in the amount of damages and together with interest, costs of suit,
and such other relief as is just and proper.

## COUNT SEVEN

### Violation of New Jersey Products Liability Act (N.J.S.A. § 2A:58C-1 et seq.)

164.    Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this complaint.

165.    Defendant is liable to Plaintiffs and the classes in this action for its failure to comply with, and/or for its violations of the New Jersey Products Liability Act (hereinafter, "PLA"), N.J.S.A. § 2A:58C-1 et seq.

166.    Under N.J.S.A. § 2A:58C-2, a manufacturer or seller of a product is liable if it failed to adequately warn or provide instructions, or was designed in a defective manner.

167.    Defendant failed to adequately warn Plaintiffs and the classes of the potential health hazards associated with the purchase and use of e-cigarettes and ENDS.

168.    Defendants e-cigarettes and ENDS are defectively designed to encourage, attract, and enable minors and new e-cigarette users to use and become addicted to its e-cigarettes and ENDS to their detriment.

169.    As a direct and proximate result of the actions and/or inactions of Defendant, Plaintiffs and the classes have suffered, and will continue in the future to suffer, severe injuries and damages.

170.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT EIGHT

### Unjust Enrichment

171.       Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this

complaint.

172.       Defendants have been unjustly enriched through their sale of JUUL products

based on material misrepresentations and omissions, false advertising, unconscionable

business practices, and fraud.

173.       Defendants have been unjustly enriched at the expense of, and to the detriment of,

Plaintiffs and the classes.

174.       Defendants knowingly received and retained wrongful benefits and funds from

Plaintiffs and the classes.

175.       It would be inequitable to allow Defendants to retain these benefits and funds.

176.       Plaintiffs and the classes are therefore entitled to recover from Defendants, as

restitution, all money paid for JUUL products, any benefit received by Defendants as a

result of such activity, and interest thereon from the time of payment.

177.       WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally

or in the alternative in the amount of damages and together with interest, costs of suit,

and such other relief as is just and proper.

## COUNT NINE

### Breach of Implied Warranty of Merchantability

178.       Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this

complaint.

179.    The Uniform Commercial Code, N.J.S.A. § 12A:2A-212, provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

180.    With respect to JUUL products, Defendants warranted that its e-cigarettes and associated ENDS would be merchantable, fit for the ordinary purposes for which they are used, and conform to promises and affirmations of fact made on the container and label.

181.    At the time of delivery, Defendants breached the implied warranty of merchantability as their products were defective as alleged above, posed severe safety risks at the time they were sold, and failed to conform to the standard performance of like products in trade.

182.    Defendants are merchants with respect to the subject products sold to Plaintiffs and the classes.

183.    Defendants products are not fit for the intended purpose of offering an alternative to cigarettes because such products when used as intended worsen or aggravate nicotine addiction.

184.    As a direct and proximate result of Defendants breach of the implied warranty of merchantability, Plaintiffs and the classes have suffered damages.

185.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT TEN

### Breach of Express Warranty

186.    Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this

complaint.

187.    N.J.S.A. § 12A:2-313 provides that express warranties by the seller are created by

any affirmation of fact or promise made by the seller to the buyer which related to the

goods and becomes a basis of the bargain.

188.    The express warranty creates an obligation that the goods shall conform to the

affirmation or promise.

189.    Defendants issued express warranties in connection with their e-cigarettes and

associated ENDS that such products were less addictive and less harmful than

conventional cigarettes through their marketing and advertisements.

190.    The affirmations of fact and promises set forth in Defendants marketing and

advertising became part of the basis of the bargain between Plaintiffs and the classes.

191.    These affirmations of fact and promises created express warranties that JUUL

products would conform to Defendants affirmations of fact and promises.

192.    Defendants breached their express warranties as JUUL products deliver a more

potent source of nicotine than conventional cigarettes and cause severe adverse health

consequences.

193.    As a direct and proximate result of Defendants breach of express warranties,

Plaintiffs and the classes suffered damages as they would not have purchased and/or used

Defendants products had they known the true facts about the products.

194.     WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT ELEVEN

## Public Nuisance

195.     Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this complaint.

196.     Defendants have engaged in systematic deceptive and unconscionable advertising and marketing of JUUL products.

197.     This misconduct caused and/or substantially contributed towards a public nuisance.

198.     Defendants' misconduct has created or substantially contributed to an unreasonable interference with rights common to the general public, including the right to be free from unreasonable interference with public health, safety, and peace.

199.     Defendants' interference with the public health, safety, and peace has been unreasonable.

200.     Defendants' inappropriate and unlawful conduct is responsible for new e-cigarette users, including minors, becoming addicted to nicotine and significantly interfered with the public health, safety, and peace.

201.     Defendants' misconduct has produced permanent or long-lasting effects and will continue until and unless Defendants reveal the compete truth about their products, including severe safety and health risks and addictiveness, and take meaningful corrective action.

202.     Defendants knew, or should have known, that their unreasonable and unlawful conduct was likely to have a significant adverse impact on public health, safety, and peace.

203.     Defendants' conduct is and was unlawful.

204.     The negative impact Defendants have had on public health, safety, and peace cannot be overstated, as they have created an epidemic of nicotine dependent individuals through their unlawful conduct.

205.     The negative health consequences of Defendants products will ultimately be borne by the community as a whole.

206.     Defendants' products deliver dangerous toxins and carcinogens to their users.

207.     The costs associated with Defendants' products include, but are not limited to, costs for medical care, increased insurance costs, an increased strain on the medical system which effects the quality and cost of care available to the public, reduced productivity of JUUL consumers, the cost to society of supporting nicotine ingestion cessation programs, increased life insurance rates, increased social services, increased addiction related crime, and increased disability benefits.

208.     Defendants had significant control over the public nuisance they created, including the design, advertising, marketing, promotion, and manufacture of JUUL products.

209.     Defendants could have prevented, or at least significantly reduced, the public nuisance by ceasing improper and unlawful marketing and advertising of its products.

210.     Defendants are not immune from a public nuisance claim.

211.    The damages and costs to society from Defendants unlawful conduct is significant and was foreseeable to Defendants.

212.    Plaintiffs and the classes have suffered, and continue to suffer, harm different from that suffered by individual residents of New Jersey.

213.    Plaintiffs and the classes sue in their public capacity for all appropriate relief to restore the public health, safety, and peace and recover appropriate damages, expenses, costs, and fees.

214.    Defendants are also liable for punitive damages to reflect the aggravating circumstances of their intentional, willful, wanton, malicious, and oppressive conduct. Defendants acted or failed to act knowingly, willfully, deceptively, with gross negligence, maliciously, and/or wantonly with conscious disregard for the public health, safety, and welfare.

215.    WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT TWELVE

### Injunctive relief in the Form of a Court Administered Program for Medical Surveillance, Periodic Monitoring & Testing, Education, and Warning

216.    Plaintiffs and the classes incorporate by reference paragraphs 1-108 of this complaint.

217.    The classes are in need of equitable relief in the form of a program of medical surveillance, periodic testing on multiple occasions, adequate notice and warning, and a

course of appropriate treatment, including addiction counseling, to protect class members

from the dangerous conditions described herein.

218.      Equity demands that neither class members, nor taxpayers, should have to bear

the burden of funding such a program, which is made necessary by the conduct of

Defendant.

219.      Accordingly, the classes seek an order directing that such a program be

established, to be administered by the Court under its equitable powers, with Defendant

being ordered to pay the costs associated with such a program, for as long as the Court

deems necessary.

220.      WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally

or in the alternative in the amount of damages and together with interest, costs of suit,

and such other relief as is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court to:

a. Certify these classes, designate Plaintiffs as the named representative of the classes, and designate the undersigned class counsel;

b. Grant declaratory and injunctive relief to the Plaintiffs' classes and establishing, at Defendant's expense, a court administered program for periodic medical testing over time, including diagnostic testing, medical monitoring, and nicotine cessation counseling;

c. Enjoin Defendants from further negligent, deceptive, unfair, and unlawful conduct as alleged herein;

d. Award actual, compensatory, and consequential damages;

e. Award restitution;

f. Award punitive damages;

g. Award reasonable attorneys' fees and costs of this case;

h. Award prejudgment and post-judgment interest; and

i. Such other and further legal, equitable, and declaratory relief as justice requires.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.

Dated: 9/10/19

By: _____
Michael A. Galpern
Zachary M. Green

KLAFTER OLSEN & LESSER

By: /s/ Seth R. Lesser
Seth R. Lesser
Morgan M. Stacey
Two International Drive, Suite 350
Rye Brook, N.Y. 10573
(914) 934-9200

Attorneys for Plaintiff